## OLIPHANT vs. MATHEWS.

Where a partnership is carried on in the name of an individual, and a suit is brought against the partners upon a note or other obligation signed by such individual, the legal presumption is that it is the note of the individual, and not of the partners. And the plaintiff, in order to recover against the partners must not only prove the execution of the note, but go further, and prove either that the money for which the note was given was borrowed on the credit of the partnership, or that when obtained it was used in the business of the partnership.

If the individual whose name is used declares, at the time of the transaction, that it is on account of the partnership, that is sufficient to bind the partners.

And it *seems* that the legal presumption that the debt is the debt of the individual in whose name the obligation is made, and not that of the firm, may be repelled and overcome by proof as to the business in which such person was engaged.

K., the general partner in a special partnership, who conducted the business of his firm in his own name, and also did business and borrowed money on his own account, applied to the plaintiff for, and obtained, his accommodation indorsement of a note made by K., upon which note K. obtained a loan from C. It did not appear whether the plaintiff indorsed the note for the partnership, or for K. individually; nor whether the money was obtained from C. on account of the partnership or of K. *Held*, that in the absence of evidence to show that the debt was contracted on account of the partnership, the firm could not be made liable to the plaintiff as indorser, unless it was shown satisfactorily that the money, after it was obtained from C., was used in the business of the partnership.

*Held also*, that the presumption was that the money was not so used; that the burthen of proving that it was thus used was upon the plaintiff; and if from the evidence it was doubtful how the money was applied the plaintiff must fail.

THIS was an appeal by the defendant from a judgment entered at a special term. The complaint stated that on the 1st of April, 1846, a limited partnership was formed, at Rochester, between Alexander Kelsey, as general partner, and James Mc-Call and Samuel D. Bradford, as special partners, the business to be conducted in the name of Kelsey. That on the 27th of October, 1847, Kelsey, for and in behalf of said partnership, applied to the plaintiff to indorse, for the benefit and accommodation of the firm, a note signed by Kelsey, payable to his own order, three months after date, for $2500, and indorsed by Kel-

Oliphant *v.* Mathews.

sey to the plaintiff or his order. That the plaintiff accordingly indorsed such note for the accommodation of the partnership, and relying upon the responsibility of the special partners; Kelsey representing that it was a partnership transaction. That on the 29th of December, 1847, Kelsey, for and on behalf, and for the use and benefit, of the firm, obtained from A. Champion a loan of $1500, and as security for the payment of such loan, transferred to Champion the said note, with the plaintiff's indorsement. That the partnership failing to pay such note, Champion brought a suit thereon against the plaintiff and Kelsey as indorsers, and recovered a judgment, which the plaintiff had been compelled to pay, and had paid. The plaintiff further alleged that on the 18th of July, 1848, the said special partnership made a general assignment of its property and effects to the defendant in this action, in trust for the benefit of its creditors; that the assigned property would be nearly or quite sufficient to pay all the debts of the partnership, and the expenses; and that Kelsey was insolvent. The plaintiff then prayed that the defendant might be directed to allow the said judgment, so recovered by Champion, as a good and valid claim against the assets of the partnership, in his hands, under the assignment, to be paid by him out of such assets.

The defendant put in an answer, denying most of the facts alleged in the complaint, and insisted that the note was indorsed by the plaintiff, not for the use or benefit of the partnership, but for Kelsey individually; and that the money received from Champion was not applied or used in the business of the firm, but for the private and individual benefit of Kelsey. The action was tried at the Monroe circuit in February, 1851, before Justice Selden. Kelsey was examined as a witness on behalf of the plaintiff. The substance of his testimony is stated in the opinion of the court. The justice found from the evidence that the note upon which the judgment was recovered was a debt justly owing by the special partnership, and justly chargeable upon the funds assigned to the defendant, and decided and adjudged that the plaintiff was a creditor of the special partnership, to the amount

of the judgment and interest, and that the defendant should allow the same.

*J. L. Angle,* for the appellant.

*S. Mathews,* respondent, in person.

*By the Court,* JOHNSON, J. It seems to be well settled that where a partnership is carried on in the name of an individual and a suit is brought against the partners upon a note or other obligation signed by such individual, the legal presumption is that it is the note of the individual and not of the partners. And the plaintiff, in order to recover against the partners, must not only prove the execution of the note, but go farther and prove either that the money for which the note was given was borrowed on the credit of the partnership, or that when obtained it was used in the business of the partnership. (*Coll. on Part.* 227. *Story on Part.* § 139. *Manufacturers' Bank* v. *Winship,* 5 *Pick.* 11. *Etheridge* v. *Burney,* 9 *Id.* 272. *U. S. Bank* v. *Burney,* 5 *Mason* 176.) The rule is otherwise where the obligation is made by a member of the firm and appears upon its face to be the obligation of the firm and not of an individual. (*Vallett* v. *Parker,* 6 *Wend.* 615.) If the individual whose name is used declares at the time of the transaction that it is on account of the partnership, that is sufficient to bind the partners. And it would seem from an examination of the reported cases that the legal presumption that the debt is the debt of the individual in whose name the obligation is made, and not of the firm, may be repelled and overcome by proof as to the business in which such person was engaged.

Thus in *Mifflin* v. *Smith* (17 *Serg. & Rawle,* 165,) where it appeared that the usual and regular business of the borrower was on account of the partnership, and that no business was done by him on his own account, except an occasional speculation, it was held that the transaction must be presumed to be on partnership account. So in the case of *S. Carolina Bank* v. *Case,*

Oliphant *v.* Mathews.

(8 *Barn & Cres.* 427,) where it appeared that the partners were Crowder, Clough, and Prefect, and the name of the firm in England was Crowder, Clough & Co., but in their business in the United States the name of Clough alone was used, and that Clough, while he resided here, never traded or drew or indorsed bills on his own account, but did on account of the firm, it was held under the circumstances that a bill indorsed by Clough here must be regarded as a bill indorsed by the firm.

In the present case it is proved that Kelsey did business and borrowed money on his own account as well as on account of the partnership, and it is not shown that one was not as constant and regular as the other. The plaintiff was a mere accommodation indorser, but it does not appear that he indorsed for the partnership. Kelsey testifies that when the plaintiff indorsed this note with several others in blank he told the plaintiff that they were to be used on his own account, or on that of the partnership, and he does not recollect which. Nothing whatever was said to Champion when he loaned the money upon the draft, on whose account the money was obtained. Nor does it appear that he even knew of the existence of the partnership. There is no evidence therefore in the case to show that the debt was contracted on account of the partnership; and unless it is shown satisfactorily that the money after it was obtained was used in the business of the partners, the relief sought must be denied. The presumption is that it was not so used, and the burthen of proving that it was, is upon the plaintiff. He must prove it as all other facts are proved, before they can be regarded as established, by evidence which places the matter beyond reasonable doubt.

If from the evidence it is doubtful how the money was applied, the plaintiff must fail. Kelsey, who transacted all the business, and who is the only witness, swears expressly that he cannot recollect whether the money raised upon this draft was sent to Beekman on his individual, or on the partnership account. He is not certain that he sent these funds to Beekman, though that is his impression. But if he did, Beekman was his creditor individually as well as the creditor of the firm, and in the

absence of satisfactory proof to the contrary the presumption still continues that they were sent by Kelsey as his own funds and applied as such by *his* creditor upon his individual debt. Certainly the law affords no presumption, in the absence of proof, either that Kelsey applied his private funds to the payment of partnership debts, or that the creditor without directions so applied them.

There is nothing in the fact that the partnership debt to Beekman was the largest. The law does not regard that circumstance in the application of payments, but where no directions are given by the debtor and no particular application made by the creditor, it applies them to the oldest demand, without regard to the amount. The witness testified that about the time he obtained the money on the note in question there was a draft of $2500 accepted by Beekman falling due. He testifies unqualifiedly that he cannot recollect what the funds obtained upon that draft were used for. He does testify, however, that there was an arrangement between him and Beekman that the latter was to accept for the former, to enable him to purchase corn, to be shipped to him, Beekman, to be sold on commission ; and that the corn, had it been purchased, would have been on partnership account. This was within the business of the partnership. These drafts, if drawn and accepted as partnership obligations, being within the scope of the partnership, would be binding on the firm, whether the avails were used in the business of the firm or not. The learned justice before whom this cause was tried has found from the evidence that this $2500 draft was the draft of the firm, and perhaps he was warranted in so finding, although, as he admits, the indications are not of a very decisive nature. He also comes to the conclusion that the note was negotiated to Champion to borrow money to pay this draft. This he must have held to be a legal conclusion from the facts. But unless I have mistaken the facts established, no such legal conclusion follows. This legal inference seems to be based upon the simple fact that here was a partnership debt which had been contracted and was about to fall due, when the money was borrowed and sent to the creditor. This

is not enough, in a case like this. Because, as we have seen, we have in the case the additional proof that the person borrowing the money in his own name and who sent it to Beekman, was doing business on his own private account, and owed Beekman at the time individual debts, and is unable to say that he borrowed the money to pay that debt, or whether it was applied upon that debt or upon his private debt.

I am of opinion therefore that the clear legal presumption is that Kelsey borrowed the money on his own account and applied it in payment of his individual debt, and that there is no proof sufficient to establish the contrary presumption.

Judgment of the special term reversed.

[MONROE GENERAL TERM, December 5, 1853. *Selden, Johnson* and *T. R. Strong*, Justices.]